UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESSE MENDEZ,<br>TDCJ No. 01560882, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL NO. SA-23-CA-0868-FB |
| BOBBY LUMPKIN, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division, | § § § § § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are *pro se* petitioner Jesse Mendez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and supplemental memorandum in support. (ECF Nos. 1, 2). In the § 2254 petition, petitioner challenges the constitutionality of his October 2022 parole revocation proceeding, arguing that he was not provided a copy of the hearing officer's report and that no evidence supported the revocation. Also before the Court are respondent Bobby Lumpkin's Answer (ECF No. 8) and petitioner's Reply (ECF No. 10) thereto.

Having reviewed the record and pleadings submitted by both parties, the Court concludes petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

**I. Background**

In September 2008, a Bexar County jury convicted petitioner of robbery as a repeat offender and sentenced him to fifty-five years of imprisonment. *State v. Mendez*, No. 2006CR3128B (144th Dist. Ct., Bexar Cnty., Tex. Sept. 5, 2008); (ECF No. 12-6 at 63-64). Petitioner was incarcerated for this offense until January 25, 2022, when he was released from

TDCJ custody to parole supervision. (ECF No. 12-6 at 71, 75, 99-101). Petitioner remained on parole until October 1, 2022, when a pre-revocation warrant of arrest was issued due to petitioner's failure to abide by the conditions of his release. *Id*. at 71-77, 108. A parole revocation hearing was held October 17, 2022, at which the Board of Pardons and Paroles (BPP) heard testimony and evidence from petitioner and his parole officer. *Id*. at 71-78, 85-94. On October 27, 2022, the BPP voted to revoke petitioner's parole, and petitioner was returned to TDCJ custody. *Id*. at 71-77, 83 108.

Petitioner challenged the revocation of his parole by filing a state habeas corpus application on December 8, 2022. *Ex parte Mendez*, No. 68,885-09 (Tex. Crim. App.); (ECF No. 12-6 at 4-19). In the application, petitioner alleged: (1) the BPP violated his due process rights by failing to provide him with a copy of the hearing officer's report from his parole revocation hearing, and (2) there was no evidence to support the revocation of his parole. *Id*. at 9-12. In an unpublished order dated June 7, 2023, the Texas Court of Criminal Appeals dismissed petitioner's first claim as moot and denied the second claim for lack of merit. (ECF No. 12-5). Petitioner then placed the instant federal habeas petition in the prison mail system on July 6, 2023, raising the same allegations that were adjudicated in state court. (ECF No. 1 at 17).

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254.[1] Under § 2254(d), a petitioner may not obtain

---

[1] There is conflicting jurisprudence as to whether challenges to a parole revocation are properly brought under the general habeas statute codified in 28 U.S.C. § 2241 rather than more stringent § 2254. *See Galbraith v. Hooper*, 85 F.4th 273, 280-81 (5th Cir. 2023), *mandate withheld*, No. 22-30159 (5th Cir. Feb. 6, 2024) (finding challenge to the revocation of his parole was properly brought under § 2241); *Hartfield v. Osborne*, 808 F.3d 1066, 1071 (5th Cir. 2015) (finding § 2254 governs *any* habeas writ filed by a person currently in custody pursuant to a state court judgment). However, the issue need not be resolved here. As demonstrated herein, the outcome of this proceeding is the same regardless of whether petitioner's claims are considered *de novo* under § 2241 or under the deferential standard of § 2254.

federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling "was so lacking in justification that there

3

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Merits Analysis

A.   **Due Process (Claim 1)**

Petitioner first alleges he was denied due process following his October 2022 parole revocation hearing when the BPP failed to provide him with a copy of the hearing officer's report. Indeed, a parolee is constitutionally entitled to certain due process protections before a State may revoke his parole. *Morrissey v. Brewer*, 408 U.S. 471, 487-488 (1972). But a parole revocation hearing is not a criminal prosecution, and "the full panoply of rights due a defendant in such a proceeding does not apply[.]" *Id*. at 480.

Nevertheless, the Due Process Clause requires certain "minimal safeguards" to protect the limited liberty interest at stake in a parole revocation hearing. Those safeguards include the right to: (1) written notice of the alleged parole violations; (2) disclosure of the evidence against him; (3) an opportunity to be heard in person and present witnesses and documentary evidence; (4) cross-examine and confront witnesses unless there is good cause to disallow confrontation; (5) a neutral decision maker; and (6) a written statement as to the evidence relied upon and the reasons for revoking parole. *Id*. at 480, 489; *see also Meza v. Livingston*, 607 F.3d 392, 404 (5th Cir. 2010). The goal of this "narrow inquiry" is to ensure that "the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id*. at 484.

Here, the record reveals that petitioner received notice of his alleged parole violations on October 10, 2022, a week before his parole revocation proceeding. (ECF No. 12-6 at 95-98). These violations include: (1) failing to reside in a specified place as approved by a supervisor,

(2) failing to complete a residential treatment program, (3) failing to abide by the rules of the facility, and (4) failing to go direct to, and reside in, the facility. *Id*. At the same time, petitioner acknowledged notice of his rights as an offender in the revocation process. *Id*. at 95. He requested a parole revocation hearing and acknowledged the date set for the hearing. *Id*. at 98.

A revocation hearing was held at the Bexar County Jail on October 17, 2022. *Id*. at 71, 75-94. The evidence against petitioner was presented at the hearing, including the testimony of petitioner's parole officer and four exhibits, including a Violation Report and a Disciplinary Incident Report. *Id*. at 85-94, 109-19. He was given the opportunity to confront and cross-examine the parole officer and unsuccessfully objected to the admission of the Disciplinary Incident Report. *Id*. at 88. *Id*. Petitioner also testified on his own behalf at the hearing, but did not submit any exhibits. *Id*. He did not challenge the neutrality of the hearing officer. *Id*. at 87. Following the hearing, the parole officer recommended the revocation of petitioner's parole while the hearing officer recommended that petitioner be allowed to continue on parole. *Id*. at 94. Ten days later, on October 27, 2022, the BPP voted to revoke petitioner's parole. *Id*. at 71, 108.

Petitioner does not allege that he was denied due process up to this point. Instead, he contends the BPP violated his due process rights by failing to provide him with a copy of the hearing officer's report following the hearing. According to petitioner, he has never been given a report explaining the reasons his parole was revoked. Petitioner correctly notes that the minimum requirements of due process in a parole revocation proceeding include "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey,* 408 U.S. at 488. However, the record confirms that petitioner was provided a copy of the written reasons for his revocation on March 27, 2023, after he filed a state habeas corpus

application challenging the BPP's decision to revoke. *Id*. at 78, 121. While petitioner refused to sign for the notice, which was given five months late, the fact that the BPP ultimately provided him with a written report satisfies the requirements of due process.

Furthermore, to the extent petitioner complains he was not able to request a reopening of the revocation hearing due to the late notice, he still fails to establish that he is entitled to federal habeas relief. While petitioner was advised by the BPP that he had a right to request a reopening of the revocation hearing within sixty days of the BPP's decision,[2] there is no such corresponding federal constitutional right. 28 U.S.C § 2254(a); *Rose v. Hodges,* 423 U.S. 19, 21 (1975) (providing that necessary predicate for granting federal habeas relief is a violation of the Constitution, laws, or treaties of the United States); *see also Wallace v. Texas Bd. Of Pardons and Paroles,* No. 4:00-cv-342-A, 2001 WL 360999, at *6 (N.D. Tex. Feb. 4, 2001) (unpublished) (providing improper denial of motion to reopen parole hearing is not cognizable in federal habeas proceeding). Thus, petitioner is not entitled to relief under this ground.

Finally, even assuming petitioner did not receive a copy of the report as alleged in his petition, this fact alone does not constitute an automatic due process violation. *Villarreal v. United States Parole Com'n,* 985 F.2d 835, 837 (5th Cir. 1993); *see also Davis v. Cockrell,* No. 4:00-cv-1767-A, 2001 WL 1388026, at *5-6 (N.D. Tex. Nov. 5, 2001) (unpublished). Petitioner must also show the delay or failure in providing the statement resulted in actual prejudice to him. *Williams v. Johnson,* 171 F.3d 300, 307 (5th Cir. 1999). Petitioner appears to contend that he would have been entitled to reopen his case had he received timely notice of the reasons for his revocation because there was, in fact, no credible evidence to support the revocation. But as

---

[2] Under former § 145.54(a) of the Texas Administrative Code, a parolee was afforded the right to request that the BPP reopen the case under certain circumstances. 37 Tex. Admin. Code Ann. § 145.54 (repealed). Although the current state statutory provisions do not appear to afford such a right, the BPP apparently continues the practice under internal Rule # 146.11. (ECF No. 12-6 at 78).

discussed in the following section, the evidence was sufficient to support the BPP's decision. Thus, petitioner fails to demonstrate that he would have been entitled to a reopening of his case had he received timely notice of the revocation of his parole, rendering any error in this regard harmless. Federal habeas relief is therefore unwarranted.

**B.    Insufficient Evidence (Claim 2)**

Petitioner next contends the evidence was insufficient to support a finding that he violated one or more conditions of his release. According to petitioner, a halfway house administrator falsely accused him of possessing a cell phone and then absconding because she was angry that petitioner would not have sex with her. However, judicial review of a decision to revoke parole "is quite circumscribed." *Villarreal v. U.S. Parole Comm'n*, 985 F.2d 835, 839 (5th Cir. 1993). Due process only requires that there be "some evidence" in the record to support the decision to revoke parole. *Id*.

Petitioner was charged with violating the following conditions of his parole: (1) Rule 3—failing to reside in a specified place as approved by a supervisor, (2) Rule 8—failing to complete a residential treatment program due to absconding from the facility, (3) Rule 9D—failing to abide by the rules of the facility by possessing a contraband cell phone, and (4) Rule 9D—failing to go direct to, and reside in, the facility until released by the BPP. (ECF No. 12-6 at 96-97). At the revocation hearing, petitioner's parole officer generally testified that petitioner was admitted to a substance abuse program at a halfway house on June 28, 2022, but a week later he punched a table and stated he was leaving the facility. *Id*. at 91. Due to his aggressive behavior, the police were contacted and petitioner was eventually escorted off of the premises. *Id*. Petitioner did not return to the facilities. *Id.* at 110-14.

In response, petitioner testified that the whole incident was simply a misunderstanding between himself and the halfway house administrator. *Id*. at 91. Petitioner stated that he was falsely accused of possessing a cell phone at the halfway house on June 6, 2022, despite not being admitted to the program until June 28, 2022. Petitioner "got loud" with the administrator over the false accusation and was escorted off the premises by police. *Id*. He did not abscond from the facility, and he did not later turn himself in on the warrant because he was afraid and depressed. *Id*. Following petitioner's testimony, the hearing officer found that petitioner committed three of the four violations he was accused of, but recommended that petitioner be allowed to continue on parole. *Id*. at 94. Nevertheless, the BPP later voted to revoke petitioner's parole. *Id*. at 71, 108.

The Court has little difficulty concluding that the testimony of the parole officer, even if controverted by petitioner, constitutes "some evidence" to support the decision to revoke his parole. The decision is also supported by the Violation Report and Disciplinary Incident Report that were submitted along with the parole officer's testimony. *Id*. at 109-19. Although petitioner was cleared of the allegation that he illegally possessed a cell phone, there is still credible evidence supporting the BPP's ultimate decision to revoke his parole. *Id*. at 90-93. This is particularly true given that a single violation of a condition of community supervision is sufficient to warrant revocation in Texas. *See Blackmon v. Thaler*, 425 F. App'x 375, 376 (5th Cir. 2011) (unpublished) ("[A] habeas court need not consider a constitutional challenge to a conviction or violation used to revoke a prisoner's parole when other valid violations of parole were found.") (citation omitted). As a result, petitioner fails to establish a violation of his due process rights.

In summary, petitioner raised each of the above allegations in state court during his state habeas corpus proceedings. The state court ultimately concluded that petitioner failed to establish an entitlement to relief. The record before this Court confirms this conclusion and demonstrates that petitioner was afforded the due process owed to him under *Morrissey* during his October 2022 parole revocation proceeding. Federal habeas relief is therefore unavailable because petitioner has not shown that the state court's merits adjudication was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent or based upon an unreasonable determination of the facts in light of the evidence presented to the state court.[3] *Richter*, 562 U.S. at 101. Relief is therefore denied.

### IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set

---

[3] Even if the AEDPA's deferential standard did not apply, the Court finds that relief would still be denied on the merits of the claim under a *de novo* standard of review.

forth above, the Court concludes that jurists of reason would not debate the conclusion that petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during petitioner's state trial and habeas corpus proceedings.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and petitioner Jesse Mendez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this 10th day of July, 2024.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE